**BYRD v. SUMMERS et al.**

**No. 4588.**

United States Court of Appeals
Tenth Circuit.

June 11, 1953.

S. J. Clendinning, Tulsa, Okl. (R. M. Mountcastle, Muskogee, Okl., was with him on the brief), for appellant.

C. A. Ambrister, Muskogee, Okl. (Carland Smith, Okmulgee, Okl., was with him on the brief), for appellees.

Before PHILLIPS, Chief Judge, and BRATTON and MURRAH, Circuit Judges.

PHILLIPS, Chief Judge.

Summers and Shipley were the owners of certain winter pasturage located near Muskogee, Oklahoma. In October, 1951, they requested Joe Brown to locate a person desirous of obtaining such pasturage. Brown contacted Byrd and made an oral agreement to furnish such pasturage to Byrd for the pasturing of 500 head of steers for a consideration of $15.00 per head. Thereafter, Byrd entered into a written contract with Summers and Shipley in which Byrd was referred to as party of the first part and Summers and Shipley as party of the second part. The material portions of the contract read:

"Said party of the first part agrees to deliver to the party of the second part in the pasture at Muskogee, Okla., 500 head of steers which party of the second part agrees to pasture from November 10, 1951 to May 1, 1952. Said cattle to be pastured in what is known as the Summers pasture (2400 acres), in Muskogee County, Oklahoma. In the event that any of said cattle should stray and be lost, said party of the second part agrees to pay for said cattle at the average market value per head of said cattle, less pasture bill. In case that any of said cattle should die, party of the second part shall furnish the brand or sufficient evidence of the animals' death, and failing to do so, shall pay party of the first part the average price of said cattle when redelivered.

\* \* \* \* \* \*

"Said party of the first part agrees to pay the sum of $15.00 per head for winter pasture and shall buy their own cake and hay if necessary, and shall pay $150.00 per month for a man to feed and care for said cattle. These cattle shall be delivered to the pasture and received in the pasture by party of the first part. Received on contract $1500.00."

On or about November 10, 1951, Byrd shipped 500 head of Jersey and Holstein cattle to Muskogee and they were placed on the pasturage. Acting for Byrd, Summers and Shipley employed one King to look after and feed the cattle. For his services King was to receive $150.00 per month. Byrd made a payment to Brown of $1500.00 on the contract. While they were on the pasturage, 27 head of the cattle died. Byrd removed the cattle from the pasturage on or about April 18, 1952.

Byrd brought this action against Summers and Shipley to recover damages for alleged breach of contract. In his complaint, Byrd alleged that Summers and Shipley failed to furnish 2400 acres of

pasturage but only furnished approximately two-thirds of that amount of pasture, and that the cattle suffered from inadequate pasture resulting in damage to Byrd of $15,125.00. Summers and Shipley filed an answer and cross-complaint for the unpaid balance due on the pasturage agreement. They alleged that Byrd was entitled to credit for the $1500.00 paid to Brown and for $315.00 on account of cattle which had died, leaving a balance due of $6,585.00. In their cross-complaint they sought judgment for that amount, together with attorney's fees, and the establishment of an agister's lien on the cattle. The case was tried to a jury. The court instructed the jury that Summers and Shipley were obligated under the contract to furnish, regardless of the acreage required, adequate and sufficient pasturage for the cattle; that their obligation was not measured by the 2400 acres recited in the contract; and that if they provided adequate and sufficient pasturage for the cattle, although the acreage was less than 2400 acres, they performed their obligation under the contract.

The jury returned a verdict in favor of Summers and Shipley for $5,250.00. The court entered judgment on the verdict and awarded Summers and Shipley $1000.00 for attorney's fees.

While the record does not disclose an adequate objection to the construction of the contract by the court in its charge to the jury, we think it is fairly inferable from the record that the question of law as to the proper construction of the contract was presented to the trial court.

The evidence, viewed in the light most favorable to Summers and Shipley, reflected these facts: The cattle when received at the pasture were thin, weak, and in poor condition. They were placed on pasture by an agent of Byrd. They were first placed on a 240-acre fenced tract, which consisted of 40 acres of cornstalks, 40 acres of hay meadow, and 160 acres on which Bermuda grass, blue stem, and lespedeza were grown. The cattle remained on that pasture approximately two weeks. They were then moved to a 400-acre pasture on which there was ripe maize, native grass, lespedeza, Bermuda grass, Johnson grass, cottonstalk fields, and cornstalk fields. Byrd saw the cattle about December 10 and raised no question as to the size or adequacy of the pasture. Byrd employed one Till to haul feed to the cattle. Till hauled feed about once every two weeks and saw the cattle from time to time. The cattle were fed cottonseed cake from December 1 to about January 20, 1952, when the feed was changed to cottonseed meal and salt. The cattle remained on the 400-acre tract until about January 1, 1952, when they were moved to a tract of 966 acres, where they remained until Byrd removed them from the pasturage. On the latter pasture there were cornstalk fields, a hay meadow, Bermuda grass, and lespedeza. Summers and Shipley had 2000 additional acres of pasture available for the cattle if needed.

In addition to sufficient pasturage, the cattle needed additional feed to provide adequate protein. The pasture provided by Summers and Shipley was adequate and sufficient. The feed was furnished by Byrd, hauled by Till, and fed by King, in accordance with Byrd and Till's instructions.

Neither Byrd nor Till raised any objection to the size or adequacy of the pasturage provided until after Byrd had removed the cattle from the pasture.

We are of the opinion that the parties did not contemplate that the cattle should be placed on a single 2400-acre tract of pasture; that the term "2400 acres" in the contract was a part of the description of the location of the pasture, rather than a measure of the amount of pasture, and that the court's instruction that it was incumbent upon Summers and Shipley to provide adequate winter pasturage for the cattle, regardless of the amount of the acreage that might be required so to do, was not prejudicial to Byrd. The verdict of the jury was fully sustained by the evidence.

It will be observed that the contract provided that the cattle were to be received on the pasture by Byrd and that they were to be fed and cared for by an employee of Byrd. In their answer, Summers and Shipley alleged that the cattle were in the charge of King, as the employee of Byrd,

and were under King's' supervision and control, and that they exercised no supervision over King.

Title 4, O.S.A. § 191, provides:

"*Lien for feeding, grazing and herding.*—Any person employed in feeding, grazing or herding any domestic animals, whether in pasture or otherwise, shall, have a lien on said animals for the amount due for such feeding, grazing or herding."

In Eastwood v. Glover, 112 Okl. 131, 240 P. 122, the court held that the lien under § 191, supra, arose only when there was a contract for personal services rendered in feeding, grazing, and herding, without any directions from the owner, except those provided in the contract. See, also, Auld v. Travis, 5 Colo.App. 535, 39 P. 357, placing a similar construction upon a like Colorado statute.

We are of the opinion that Summers and Shipley were not employed to graze the cattle and were not entitled to a lien under § 191, supra, or to an award of attorney's fees.

The judgment is modified by striking out the award for attorney's fees, and, as modified, is affirmed.